UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRUSTEES OF THE PAINTERS
UNION DEPOSIT FUND,

Plaintiff,

v.

L&R PAINTING, LLC et al.,
Defendants.

Case No. 21-11780
Honorable Shalina D. Kumar
Magistrate Judge David R. Grand

---

**OPINION AND ORDER DENYING CROSS-MOTIONS FOR SUMMARY
JUDGMENT (ECF NOS. 35, 36)**

---

Plaintiff Trustees of the Painters Union Deposit Fund (the "Trustees")

sued defendants L&R Painting, LLC ("LRP") and L&R Painting Contractors

LLC ("LRPC") to collect delinquent fund contributions stemming from

defendants' alleged violations of a collective bargaining agreement

between the parties. ECF No. 9.

The parties filed cross-motions for summary judgment. ECF Nos. 35,

36. The motions are fully briefed and do not need a hearing for decision.

ECF Nos. 35-36, 38-39, 41-42; *see* E.D. Mich. LR 7.1(f). For the reasons

below, the Court denies the parties' motions.

## I.    Background

The Trustees administer the Painters Union Deposit Fund (the "Fund"), a collection fund designed to centralize employer fund contributions pursuant to certain collective bargaining agreements. *See* ECF No. 36-4, PageID.417-18. LRPC is a Michigan limited liability company (LLC), which Boban Ljuljdjurovic formed and operated. ECF Nos. 35-3, 35-10.

In 2016, Boban signed a collective bargaining agreement (the "CBA"). ECF No. 36-2, PageID.413; ECF No. 35-10, PageID.360. The CBA requires an employer to submit monthly payroll reports detailing the amount of benefit contributions that the employer must pay into the Fund and to make all such contributions on a timely basis. ECF No. 36-2, PageID.405. LRPC undisputedly agreed to these terms. Boban signed the CBA as "President," but the CBA lists "L&R Painting LLC" as the sole employer subject to the CBA. *Id.* at PageID.413.

LRP, also a Michigan LLC, did not exist as such until Rajko Ljuljdjurovic, Boban's father, organized it four years later in 2020. ECF No. ECF No. 35-2. Rajko operated LRP without Boban. ECF No. 35-10, PageID.361. LRP and LRPC co-existed for about one year before Boban formally dissolved LRPC in 2021. *See* EFC No. 35-3.

With LRPC defunct, the Fund conducted a comprehensive payroll audit of LRP in October 2021 pursuant to the CBA.[1] ECF No. 36-4, PageID.422. According to the audit, LRP was $421,101.14 short on Fund contributions based on work done by defendants' employees and contracting or subcontracting work done by non-union painting companies and individual painters. ECF No. 36-3, PageID.415; ECF No. 36-4, PageID.423. The audit did not indicate that LRPC itself was short on Fund contributions.

Consequently, the Trustees filed this lawsuit against both LRP and LRPC, seeking to collect the delinquent contributions. ECF No. 9. According to the Trustees, LRP is subject to the CBA expressly or as LRPC's alter ego or legal successor. *Id.* at PageID.84. The Trustees' claim that defendants are jointly and severally liable for violations of the CBA under the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, and for delinquent fund contributions and related amounts under the Employee Retirement Income Security Act (ERISA), 29 U.S.C §§ 1145 and 1132. *Id.* at PageID.81, 85.

---

[1] It is not genuinely disputed that the Fund audited LRP—not LRPC. *See* ECF No. 9-2, PageID.105-08; ECF No. 39, PageID.621-22.

## II.     Standard of Review

When a party files a motion for summary judgment, it must be

granted "if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is

genuinely disputed must support the assertion by: (A) citing to particular

parts of materials in the record . . . ; or (B) showing that the materials cited

do not establish the absence or presence of a genuine dispute, or that an

adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c)(1).

In reviewing a motion for summary judgment, the court must "view the

factual evidence and draw all reasonable inferences in favor of the non-

moving party." *Williams v. Mauer*, 9 F.4th 416, 430 (6th Cir. 2021) (citation

omitted). Further, the court may not "weigh the evidence and determine the

truth of the matter" at the summary judgment stage. *Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 249 (1986). The ultimate question for the court

to determine "is whether the evidence presents a sufficient factual

disagreement to require submission of the case to the trier of fact, or

whether the evidence is so one-sided that the moving parties should prevail

as a matter of law." *Payne v. Novartis Pham. Corp.*, 767 F.3d 526, 530 (6th Cir. 2014) (citing *Anderson*, 477 U.S. at 255).

The moving party bears the initial burden of "informing the district court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (citation omitted). If the moving party carries its burden, the non-moving party "must come forward with specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). That is, the non-moving party must make an affirmative showing with proper evidence and must "designate specific facts in affidavits, depositions, or other factual material showing 'evidence on which the [trier of fact] could reasonably find for the [non-movant].'" *Brown v. Scott*, 329 F. Supp. 2d 905, 910 (E.D. Mich. 2004). Mere allegations or denials of the non-movant's pleadings will not satisfy this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 251.

When, as here, there are cross-motions for summary judgment, the court considers them separately, and "it is possible that neither party meets its burden." *Peatross v. Liberty Mutual Personal Ins. Co.*, 575 F. Supp. 3d 887, 891 (E.D. Mich. 2021) (citing *Ohio State Univ. v. Redbubble, Inc.*, 989

F.3d 435, 442 (6th Cir. 2021)). When considering the plaintiff's motion, the evidence is viewed in the light most favorable to the defendant, and plaintiff bears the burden to show its entitlement to judgment as a matter of law. *Id*. The opposite is true for defendant's motion. *Id*.

The court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Indeed, "it is not for the court to search the record and construct arguments. Parties must do that for themselves*." Brenay v. Schartow*, 709 F. App'x 331, 337 (6th Cir. 2017) (declining to consider party's arguments when it left "it to the court to seek out the relevant law, identify the relevant evidence, and develop their argument for them"); *see also, e.g.*, *Lyngaas v. Curaden* AG, No. 17-10910, 2021 WL 6049428, at *3 (E.D. Mich. Dec. 21, 2021) ("Where a party fails to explain an argument and supply authority . . . a court need not attempt to supply the missing information."). Accordingly, "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived"—"[i]t is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (quotations and alterations omitted).

### III.   Analysis

### A. LRP

The parties move for summary judgment on the Trustees' claims that LRP breached the CBA's subcontracting provisions in violation of LRMA, 29 U.S.C. § 185, and relatedly that LRP owes delinquent fund contributions under ERISA, 29 U.S.C. §§ 1132, 1145. Under 29 U.S.C. § 185, LMRA "grants federal courts jurisdiction to resolve disputes between employers and labor unions about collective-bargaining agreements. When collective-bargaining agreements create pension or welfare benefits plans, those plans are subject to rules established in ERISA." *M&G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 434 (2015) (citation omitted). ERISA rules permit plan fiduciaries to bring civil actions to enforce plan terms and provides that "[e]very employer who is obligated to make contributions to a multiemployer plan under . . . a collectively bargained agreement shall . . . make such contributions in accordance with the terms" of the agreement. 29 U.S.C. § 1145; *see id.* § 1132.

Defendants argue that LRP cannot be liable for violations of the CBA under LMRA and delinquent fund contributions under ERISA because it was not bound by the CBA. The Trustees counter, as a preliminary matter, that defendants' argument is precluded by their failure to maintain

adequate business records. ECF No. 39, PageID.611 (citing *Mich. Laborers' Health Care Fund v. Grimaldi Concrete*, 30 F.3d 692 (6th Cir. 1994)).

ERISA requires employers to maintain adequate records. 29 U.S.C. § 1059(a)(1). When an employer violates this recordkeeping duty and a plaintiff shows that at least "some [CBA-]covered work was performed," the employer is presumed liable for contributions on all work at issue and bears the burden to show what work was not covered under the CBA. *Grimaldi*, 30 F.3d at 697. The Trustees suggest that under *Grimaldi*, defendants' poor recordkeeping shifts the burden onto defendants to show whether and to what extent they are not liable for delinquent contributions under the CBA. *See id.* at 696.

But in their briefing, the Trustees argue for *Grimaldi* burden-shifting only as to whether certain LRP work fell under the CBA's craft jurisdiction, not as to the threshold issue of whether LRP was bound by the CBA. Because they do not develop an argument for applying *Grimaldi* burden-shifting to the question of whether LRP was bound by the CBA, they forfeit that argument. *See McPherson*, 125 F.3d at 995-96.

Even if the Court were to consider the argument, it is without merit— poor recordkeeping does not affect the analysis of whether LRP is bound

by the CBA. In *Trustees of Detroit Carpenters Fringe Benefit Funds v. Patrie Construction Co.*, the Sixth Circuit affirmed the dismissal of a delinquent contribution claim against an employer that did not sign the CBA covering the dispute. 618 F. App'x 246, 255 (6th Cir. 2015). There, the plaintiffs claimed that, as the alter ego of a CBA signatory, the nonsignatory employer evaded its duties under the CBA to pay delinquent contributions. *Id.* at 249. But the court rejected the plaintiffs' alter ego claim because the plaintiffs did not plausibly allege alter ego status. *Id.* at 255. As a result, there were no grounds for subjecting the nonsignatory employer to the CBA and, by extension, applying *Grimaldi* to alleged audit issues under the CBA. *Id.* at 255-56. The partial dissent noted that an employer's poor recordkeeping may make alter ego claims against the employer more difficult to prove, but the majority's decision nonetheless precluded any audit rights—and potential *Grimaldi* burden-shifting—as to the nonsignatory employer. *See id.* at 261 (Merritt, J., dissenting in part).

Likewise, although defendants' alleged poor recordkeeping may frustrate the Trustees' ability to establish that LRP is subject to the CBA, it does not shift the burden onto defendants to show that LRP is not subject to the CBA. *See id.* Under *Patrie*, the Trustees must first establish grounds

for subjecting LRP to the CBA before *Grimaldi* burden-shifting applies.[2]
*See id.* at 255-56. Accordingly, the Trustees retain the burden to prove that
LRP was bound by the CBA.

The Trustees do not dispute that as a prerequisite to its claims, LRP
must have been bound by the CBA. *See Sheet Metal v. Total Air Sys., LLC*,
2014 U.S. Dist. LEXIS 82971, at \*10 (N.D. Ohio June 18, 2014). Rather,
the Trustees argue that LRP was bound (i) as a signatory to the CBA; (ii)
because LRP manifested an intent to be bound by the CBA; (iii) as LRPC's
successor; or (iv) as LRPC's alter ego. The Court analyzes each in turn
and concludes that the alter ego theory precludes summary judgment.

### 1.  Liability as a Signatory

In examining the terms of collective bargaining agreements, courts
apply "ordinary contract principles." *Cole v. Meritor, Inc.*, 855 F.3d 695, 698
(6th Cir. 2017); *M&G Polymers*, 574 U.S. at 535 (stating same for collective
bargaining disputes under both 29 U.S.C. §§ 185 and 1145). Under well-
established contract principles, "it is axiomatic that courts cannot bind a
non-party to a contract because that party never agreed to the terms set
forth therein." *Abney v. Amgen, Inc.*, 443 F.3d 540, 547 (6th Cir. 2006).

---

[2] Only once the Trustees establish that LRP was subject to CBA would it
bear the burden to show what specific work the CBA does not cover.
*Grimaldi*, 30 F.3d at 697.

Here, the undisputed facts show that only LRPC expressly agreed to the CBA. In 2016 Boban, as president of LRPC, signed the CBA as "President." ECF No. 35-10; ECF No. 36-2, PageID.413. Rajko did not sign the CBA. *See* ECF No. 36-2. LRP did not even exist as an LLC until its organization in 2020. ECF No. 35-2. Boban had no role in LRP, ECF No. 35-10, and thus could not have bound LRP to the CBA, especially not some four years before LRP existed.

To avoid this conclusion, the Trustees contend that the CBA expressly identifies LRP as the employer subject to the CBA and, as such, defendants cannot raise a defense based on the CBA's execution. But the Trustees overlook the law on this issue.

Although "governing law restricts the defenses employers may raise to suits brought to collect delinquent contributions to ERISA funds," *Operating Eng'rs Local 324 Health Care Plan v. G&W Constr. Co.*, 783 F.3d 1045, 1051 (6th Cir. 2015) (citations omitted), "[c]ourts generally permit a few defenses, including . . . the contract requiring the contributions was void at its inception . . . ." *Id.* at 1052 (citation omitted). "An employer [may] raise a defense of fraud in the execution of the contract because success on that defense would render the contract void ab initio and preclude the employee benefit fund from collecting." *Id.* (citation omitted).

"[F]raud in the execution . . . encompasses the situation where an agent enters into a collective bargaining agreement without authority." *Laborers' Pension Fund v. R.I. Busse Inc.*, 1994 WL 605734, at *1 (N.D. Ill. Oct. 28, 1994) (citations omitted).

Here, defendants contend that Boban could not have bound LRP to the CBA when he signed the CBA because he was president of only LRPC and had no role in LRP, which had yet been formed. Regardless of whether, as the Trustees suggest, LRP somehow existed when Boban signed the CBA, defendants could show fraud in the execution—Boban had no authority in any case to enter into the CBA for LRP. Because the Trustees offer no argument or evidence to dispute that, it has not supported its theory that LRP is bound by the CBA as a signatory.

### 2. Liability through Manifest Intent to be Bound

"[A] collective bargaining agreement is not dependent on the reduction to writing of the parties' intention to be bound . . . all that is required is conduct manifesting an intention to abide and be bound by the terms of an agreement." *Cent. States, Se. & Sw. Areas Pension Fund v. Behnke, Inc.*, 883 F.2d 454, 459 (6th Cir. 1989) (quoting *Gariup v. Birchler Ceiling & Interior Co.*, 777 F.2d 370, 373 (7th Cir. 1985)).

In arguing that LRP is bound by the CBA through manifesting an intent to be bound, the Trustees point only to LRP's submission of payroll reports specifically identifying the CBA as conduct manifesting such intent. However, where courts have held an employer was bound to a collective bargaining agreement due to its conduct, they "have emphasized, among other factors, the payment of union wages, the remission of union dues, the payment of fringe benefit contributions, the existence of other agreements evidencing assent and the submission of the employer to union jurisdiction, such as that created by grievance procedures." *Bricklayers Local 21 of Ill. Apprenticeship & Training Program v. Banner Restoration, Inc.*, 385 F.3d 761, 766 (7th Cir. 2004); *see also Gariup*, 777 F.2d at 376 (indicating that an employer became a party to the collective bargaining agreement when it signed an Assent of Participation form, returned unsigned Acceptance of Working Agreement forms, made contributions to the pension funds and paid wages at union rates).

The Trustees argue none of these factors or why LRP's submission of payroll reports sufficiently establishes an intent to be bound. Further, the Trustees offer no authority that speaks to this issue, let alone how this issue resolves where the employer lacks any connection to the CBA as an alter ego or successor entity. Because the Trustees fail to show, as a

matter of law, that LRP manifested an intent to be bound by the CBA, their theory that LRP's conduct bound LRP to the CBA fails.[3]

### 3. Successor Liability

Federal courts have created a federal common law successorship doctrine that imposes liability upon successors beyond the common law to protect important employment law policies. *See Golden State Bottling Co. v. NLRB*, 414 U.S. 168 (1973). The federal common law successorship doctrine operates as "an exception from the general rule that a purchaser of assets does not acquire a seller's liabilities." *Chicago Truck Drivers Union (Indep.) Pension Fund v. Tasemkin, Inc.*, 59 F.3d 48, 49 (7th Cir. 1995) (citation omitted). Although most states have adopted exceptions to the general rule, thus allowing creditors to pursue a successor for the predecessor's liabilities if the "'sale' is merely a merger or some other type of corporate reorganization that leaves real ownership unchanged[,] . . . [s]uccessor liability under federal common law is broader still." *Id.* Under federal common law, a purchaser of assets may be liable for CBA violations and delinquent contributions if there was "(1) notice by the buyer

---

[3] Unlike the other theories of liability, only the Trustees request summary judgment as to whether LRP is bound by the CBA through manifest intent. Because the Trustees fail to affirmatively show this as a matter of law, the Court denies the Trustees' request for summary judgment on this issue.

of the seller's liability; and (2) sufficient evidence of continuity of operations between the buyer and seller." *Sheet Metal*, 2014 U.S. Dist. LEXIS 82971, at *22 (citing *Einhorn v. M.L. Ruberton Const. Co.*, 632 F.3d 89, 99 (3rd Cir. 2011) and *Upholsters' Int'l Union Pension Fund v. Artistic Furniture of Pontiac*, 920 F.2d 1323 (7th Cir. 1990)).

As a threshold issue, it is not clear whether successor liability may apply here. As defendants' likewise note, nothing suggests that LRP purchased LRPC or its assets. But the successorship doctrine frames successor liability as applicable to purchasers of assets. *See, e.g.*, *Tasemkin*, 59 F.3d at 49; *Einhorn*, 632 F.3d at 99. The Supreme Court has distinguished typical successorship cases from successorship cases where the alleged successor is "merely a disguised continuance of the old employer"—that is, an alter ego of its predecessor. *Howard Johnson Co. v. Detroit Local Joint Exec. Bd.*, 417 U.S. 249, 259 n.5 (1974) (citation omitted). "Such cases involve a mere technical change in the structure or identity of the employing entity, frequently to avoid the effect of the labor laws, without any substantial change in its ownership or management." *Id.*

Here, although the Trustees do not contend LRP bought LRPC, they do contend that LRPC merely changed its name to avoid its labor law duties. This case thus fits much better into the alter ego mold, as opposed

to the typical successorship mold. For these reasons and because the

Trustees provide no argument as to whether successor liability applies

where LRP did not acquire LRPC, the Trustees' theory that LRP is bound

by the CBA as LRPC's successor fails.

### 4.  Alter Ego Liability

"The alter ego doctrine is most commonly used in labor cases to bind

a new employer that continues the operations of an old employer in those

cases where the new employer is merely a disguised continuance of the

old employer." *NLRB v. Fullerton Transfer & Storage Ltd., Inc.*, 910 F.2d

331, 336 (6th Cir. 1990). In alter ego cases, "the successor is in reality the

same employer and is subject to all the legal and contractual obligations of

the predecessor." *Howard Johnson,* 417 U.S. at 259 n.5 (citations omitted).

"Where two companies are engaged in the same business in the

same marketplace," courts decide whether one is the alter ego of the other

by asking "whether the two enterprises have substantially identical

management, business purpose, operation, equipment, customers,

supervision and ownership." *Rd. Sprinkler Fitters Local Union No. 669 v.*

*Dorn Sprinkler Co.*, 669 F.3d 790, 794 (6th Cir. 2012). "Evidence, or lack

thereof, of an employer's intent to evade the obligations of a collective

bargaining contract is merely one of the factors to be considered and is not a prerequisite to the imposition of alter-ego status." *Id.*

The alter ego analysis is flexible, and all the relevant factors must be considered together. *Id.* No factor is dispositive, *id.*, but the evidence must show "the kind of pervasive intermingling of funds and operations necessary to support a finding that two companies are alter egos of one another." *Trs. of the Resilient Floor Decorators Ins. Fund v. A & M Installations, Inc.*, 395 F.3d 244, 249 (6th Cir. 2005).

Here, the parties do not dispute that LRP and LRPC had the same business purpose and operated in the same market: both provided commercial painting services in Michigan. The Court, therefore, must consider the above factors. *See Dorn Sprinkler*, 669 F.3d at 794. Based on the factors and evidence, the Court concludes that a reasonable trier of fact could find for either party as to whether LRP is "merely a disguised continuance" of LRPC. *Fullerton*, 910 F.2d at 336.

On the one hand, defendants' evidence shows that LRP was substantially distinct from LRPC. Despite the familial relationship between defendants' leaders, "the overall nature" of each's management" is different. *Dorn Sprinkler*, 669 F.3d at 795. According to defendants' affidavits, Boban managed and supervised only LRPC, while Rajko did the

same only for LRP. ECF No. 35-10, PageID.361; *see also* ECF No. 35-9, PageID.355. Likewise, the affidavits indicate that only Boban owned LRPC, while only Rajko owned LRP; and that they did not share the same operations, equipment, bank accounts, or customers. ECF Nos. 35-9, 35-10. Defendants' evidence, therefore, shows that they had no substantial identity in management, supervision, ownership, operations, equipment, bank accounts, or customers.

On the other hand, the Trustees' evidence, construed in the light most favorable to the Trustees, shows substantial identity in ownership and finances. Rajko was an authorized signer on LRPC's bank account—from which he received significant payments and Boban received none—and LRPC paid Rajko's estimated income taxes. ECF Nos. 39-2, 39-4, 39-9. These facts, coupled with the fact that the Rajko is Boban's father, permits a reasonable inference that Rajko had a significant ownership interest in both LRPC and LRP, while Boban had little to none in either company. Relatedly, LRP and LRPC commingled funds in the same bank account for certain business. *See* ECF Nos. 39-19, 39-6; ECF No. 35-5. This shows pervasive intermingling of defendants' funds, a necessary finding for alter ego status. *See A & M Installations*, 395 F.3d at 249.

Likewise, the Trustees' evidence shows substantial identity in defendants' operations, employees, business purpose, and customers. Both LRP and LRPC rented equipment as needed, owned no equipment, and generally lacked corporate formalities and formal bookkeeping, showing that the two operated in the same way. ECF No. 36-6, PageID.545-46; ECF No. 36-7, PageID.555-61. The two even undisputedly shared the same home office, further supporting a finding that the two shared operations. ECF No. 36-7, PageID.556, 558. LRP employed almost half of LRPC's employees at various times. *See* ECF No. 36-4, PageID.431-61, 472-73. And as noted above, both offered commercial painting services and served the same customer pool.[4] *See* ECF No. 35-10, PageID.361.

In sum, a reasonable trier of fact could find, based on defendants' evidence, that LRP is substantially distinct from LRPC such that they are

---

[4] The Trustees assert, without explanation, that LRP intended to evade its CBA obligations because Rajko and his family could avoid liability were the Court to find in LRP's favor. The Trustees do not explain this circular argument or cite to any evidence or authority in its summary judgment motion or its response to defendants' summary judgment motion. The Court, therefore, cannot assess LRP's intent to evade CBA obligations. If anything, the evidence shows that LRP inexplicably tried to meet certain CBA obligations by submitting payroll reports to the union fund. *See* ECF No. 36-2, PageID.405; ECF No. 36-4, PageID.431-61.

not alter egos. Similarly, based on the Trustees' evidence, a reasonable trier of fact could find that LRP is indeed substantially identical to LRPC such that the two are alter egos. Because the evidence as to defendants' alter ego status is not so one-sided that one party should prevail as a matter of law, a trier of fact must decide the issue of whether defendants are alter egos of each other such that LRP is bound by the CBA. *See Payne*, 767 F.3d at 530. The Trustees' claims against LRP turn on this issue—accordingly, the Court denies summary judgment in either party's favor as to the Trustees' claims against LRP.[5]

## B. LRPC

The parties move for summary judgment on the Trustees' claim that LRPC breached the CBA and owes delinquent contributions under LMRA and ERISA. Defendants argue the Trustees cannot show that LRPC violated the CBA or owes delinquent fund contributions. According to defendants, LRP and LRPC are separate employers and the Trustees'

---

[5] Defendants argue that even if LRP were bound by the CBA, they cannot be liable for a portion of the alleged delinquent contributions because certain work fell outside the CBA's jurisdiction in various ways. These arguments are premature. As the Court concludes above, LRP would not be liable for any alleged delinquent contributions unless a trier of fact finds that it is LRPC's alter ego. If a trier of fact finds that defendants are not alter egos of each other, the Court's rulings on what portions of the alleged delinquent contributions for which LRP bears liability would become moot. Accordingly, the Court declines to decide these issues at this stage.

evidence purports to identify contribution deficiencies attributable only to LRP, not LRPC. The Trustees' response, like its summary judgment motion, indicates that LRPC would bear liability only if LRP and LRPC were alter egos of each other.

Because the Court concludes above that the issue of whether LRP and LRPC were alter egos is a question for the trier of fact and the Trustees offer no evidence showing that LRPC independently violated the CBA or owes delinquent contributions, the Court denies summary judgment in either party's favor as to the Trustee's claims against LRPC.

## IV.   Conclusion

For the reasons above, the parties' cross-motions for summary judgment (ECF Nos. 35, 36) are **DENIED**.

s/ Shalina D. Kumar
SHALINA D. KUMAR
Dated: September 27, 2024                United States District Judge